Filed 1/21/26  P. v. Lozano CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100691 |
| Plaintiff and Respondent, | (Super. Ct. No. 05F00498) |
| v. | |
| ANTHONY DAVID LOZANO, | |
| Defendant and Appellant. | |

Defendant Anthony David Lozano[1] was committed as a sexually violent predator under the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.) (Act).  He previously appealed that determination, arguing the trial court erred by (1) denying his motion under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) and (2) denying his

---

[1]     Defendant's name appears as both "Anthony David Lozano" and "Anthony David Lozano-Marks" throughout the record.  We use defendant's name as it appears on the order appealed and notice of appeal.

1

motion for a continuance to file a motion to dismiss based on a speedy trial violation. (*People v. Lozano* (Aug. 10, 2022, C094245) [nonpub. opn.] (*Lozano*).) We agreed with defendant's second contention and conditionally reversed his commitment for the purpose of holding a hearing on defendant's motion to dismiss based on a speedy trial violation. (*Ibid.*) On remand, the trial court held the hearing and denied the motion. On appeal after remand, defendant challenges the trial court's denial of his motion to dismiss and argues the trial court's prior finding he was a sexually violent predator lacked sufficient evidence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Proceedings Under The Act*[2]

"In June 2009, following his conviction for assault with intent to commit rape, the prosecution filed a petition to civilly commit defendant as [a sexually violent predator]. In November 2009, the trial court found probable cause that defendant was [a sexually violent predator] and ordered him detained at a secure facility pending trial on the . . . commitment petition.

"Over the course of the next 11 years, the trial court granted approximately 80 continuances of the [commitment] proceedings . . . for a variety of reasons . . . . Defendant's appearance was waived at most of these hearings. As to two of the hearings, one in 2012 and one in 2018, it appears defendant requested the continuances to allow him to continue institutional programming. In July 2018, the [prosecution] reported

[2] The parties relied on the court's record and our summary of it when arguing defendant's motion to dismiss. Neither defendant, nor the prosecution, provided additional evidence on remand, except executive and judicial orders implementing emergency protocols related to the COVID-19 pandemic. Given the state of the evidence, we adopt our recitation of the procedural history of defendant's case from our prior opinion here.

defendant did not want to go to trial. Also in July 2018, the parties agreed there was no need for a time waiver as defendant had made no request for a speedy trial.

"Between August 2018 and March 2021, the trial court granted approximately 20 more continuances. [¶] In August 2018, the matter was continued because defendant refused to meet with counsel. Defense counsel indicated he was going to prepare for trial. In October 2018, the matter was continued as the [prosecution] had requested an updated evaluation, and defense counsel was determining whether to hire an expert or set the matter for trial.

"Following that October 2018 hearing, defendant wrote to counsel, requesting counsel set the matter for trial. Counsel responded stating he was willing to set the matter for trial, noting defendant had refused to meet with him the last two times he attempted to visit, and recommending against setting the matter for trial without defendant first meeting with counsel or the defense investigator.

"Between October 2018 and August 2019, the matter was continued primarily for reasons involving expert evaluations, including: defense counsel needed time to assess the [prosecution]'s updated expert evaluations and determine if a new defense evaluation was needed; the defense expert needed additional time to prepare a report, as the previous expert had resigned because of pay issues; and the [prosecution] needed updated reports from [its] expert. Complicating defense counsel's ability to obtain timely expert reports, was the fact that there were only three defense experts in the state, and they were very busy.

"On August 8, 2019, defendant again wrote to defense counsel, stating he intended to move for a hearing to address an alleged conflict of interest between himself and counsel. He asserted counsel had failed to move his case forward in a timely manner and he wanted new counsel for purposes of bringing a motion to dismiss, in part based on counsel's incompetent representation. Counsel responded that defendant's case would go to trial at the next available opportunity. Counsel also distinguished defendant's case

3

from others in which a dismissal was appropriate, based on the fact defendant had 'asked for multiple continuances given numerous behavior and legal issues' defendant had had in the state hospital.

"Between September 2019 and January 2020, the trial court granted a number of additional continuances, for reasons such as defense counsel's scheduling conflicts and attendant inability to review the updated defense expert's report with defendant, the [prosecution]'s entitlement to discovery of that updated defense report, and defense counsel's continued inability to meet with defendant. One continuance was granted with no reason given.

"At the January 23, 2020 hearing, counsel moved to set the matter for trial on April 30, 2020. Defendant was present via video conference and stated he wanted to declare a conflict with counsel and wanted independent counsel to file a motion concerning [*People v. Superior Court* (*Vasquez*) (2018) 27 Cal.App.5th 36] issues. The [prosecution] noted a number of patients at the state hospital had been attempting to make such motions, and suggested the matter be set for a *Marsden* hearing. Since defendant would have to be present in court for that hearing, the *Marsden* motion was set on February 20, 2020, and a trial date of April 30, 2020[ was set]. Defendant was not produced for the February 20 *Marsden* hearing based on an administrative error, and the hearing was reset for March 13, 2020. That hearing was continued as defense counsel was in trial in another county. . . . The hearing was continued to March 27, 2020. It then appears the matter was continued because of [COVID-19] court closures.

"The matter was back on calendar on June 8, 2020. Defense counsel requested a continuance to August 2020, because of an ongoing trial in another county that had also been continued because of COVID-19 court closures. The [prosecution] objected to that date, noting the issue in this case was related to the failure to bring the case to trial and defendant had been in county jail awaiting the *Marsden* hearing for months and therefore

4

not receiving any treatment or programming.  The trial court set the *Marsden* hearing for June 12, 2020.

"Defendant's *Marsden* motion was heard on June 12, 2020[ and denied]. . . .  The matter was set for trial on August 26, 2020, based on both defense counsel's and the [prosecution]'s earliest availability.

"Defense counsel requested another continuance in August 2020, based on their expert witness needing additional time.  The [prosecution] also noted [it was] entitled to discovery of that report and additional time after receiving it.  The court found good cause to continue the matter to September 30, 2020." (*Lozano*, *supra*, C094245, fns. omitted.)

"In September 2020, defense counsel requested another continuance, this time based on the defense expert informing defense counsel she could not assist the defense, necessitating a change in trial strategy.  In addition, defense counsel was waiting for additional updated records from the state hospital.  Defense counsel requested a continuance to October 26, 2020.  Defendant objected to the continuance." (*Lozano*, *supra*, C094245.)  "At the October 22, 2020 trial readiness conference, defense counsel requested another continuance.  Counsel indicated they had numerous new records to review and needed time to prepare an alternate defense strategy based on their expert's resignation.  Defendant objected to the continuance" and requested another *Marsden* hearing.  (*Ibid*.)

"Following [the denial of that] *Marsden* [motion], defense counsel requested a continuance of the trial date to allow him time to review approximately 1,000 pages of new material provided by the prosecution.  He stated although he had interviewed witnesses and prepared the defense, the materials were relevant to the defense and had to be reviewed to provide defendant effective assistance of counsel.  Defendant objected to this continuance.  The trial court granted the continuance to December 10, 2020.  [¶] [T]he trial court continued the matter two more times.  The first continuance was due to

5

courthouse administrative error and COVID-19 scheduling complications. Defendant objected to this continuance. There was no reason stated for the second continuance." (*Lozano*, *supra*, C094245.)

"Defendant waived jury trial[,] and a court trial was set for March 18, 2021." (*Lozano*, *supra*, C094245.) "[T]he court found the evidence undisputed that defendant suffered from various diagnosed mental illnesses, had committed a sexually violent offense, and had previously been determined to be a mentally disordered offender. The court concluded as a result of the diagnosed mental disorders and his criminal history, defendant was [a sexually violent predator], and it was necessary to confine him in a secure facility." (*Ibid*.)

## II

### *Prior Opinion And Proceedings On Remand*

Defendant appealed from the order finding him a sexually violent predator, arguing "the trial court abused its discretion by: (1) denying his *Marsden* motions; and (2) denying his motion for a continuance to file a motion for dismissal based on a violation of his due process right to a timely trial." (*Lozano*, *supra*, C094245, fn. omitted.) We agreed with defendant's latter contention and conditionally reversed the matter for the trial court to hold a hearing on the motion to dismiss based on defendant's due process right to a timely trial. (*Ibid*.)

On remand, the parties filed briefs, and the trial court held a hearing on defendant's motion to dismiss. Defendant's motion relied primarily on our prior opinion as its factual basis, as quoted above. Defendant conceded the delay from 2009 to 2018 "would likely be charged to [him], as most of the continuances for the first nine years were at defense counsel's request and . . . defendant apparently agreed to this strategy at least for a time." "From 2018 through the date of trial, [however,] defendant consistently asserted his right to a timely trial and objected to continuances. Many of those delays appear supported by good cause, but some would likely also be charged to the state, such

6

as difficulties with defense experts."  Defendant further argued the failure to secure a time waiver from him and transport him to court throughout the entire pendency of his commitment proceeding was the fault of the state and contributed to the due process violation.  Accordingly, defendant argued, expert witness issues and the failure to secure a time waiver deprived him of his due process rights to a speedy trial.

The trial court issued a written order applying the *Barker v. Wingo* (1972) 407 U.S. 514 (*Barker*) factors to assess whether defendant suffered a speedy trial violation, as clarified by *Camacho v. Superior Court* (2023) 15 Cal.5th 354, 379 (*Camacho*).  These factors require weighing the length of the delay, the reason for the delay, defendant's assertion of his speedy trial right, and any resulting prejudice.  (*Id*. at p. 380.)  The court summarized its findings and rulings orally to defendant.  In relevant part, the court found there was a 12-year delay before defendant was brought to trial, which justified defendant's bringing of the motion.

Further, "the [prosecution] did not deliberately delay the trial in order to hamper [the] defense . . . .  [¶]  [T]he [c]ourt and the [prosecution] bear some responsibility for the pretrial delay, and [the court] factor[ed] that into the calculus.  [¶]  [T]here are a number of purely valid reasons justifying a number of the continuances."  These reasons included court closures during the COVID-19 pandemic and the death of defendant's evaluator who would serve as an expert witness.  The court further stated:  "Ultimately, though, I think [defendant] bears most of the responsibility for the pretrial delay about which he now complains, and I discern that from the transcripts of the *Marsden* hearings."  As to whether defendant asserted his right to trial, the court found: "[Defendant] didn't want to go to trial before 2018, and he did not assert his trial right until then.  When he did express an interest in a trial date, it was part of a strategy to pursue a motion to dismiss for pretrial delay, and he still had no favorable expert . . . .  [¶] And then once he did assert the right, he did object when his counsel subsequently

requested continuances." The court found this factor favored defendant, but only marginally.

As to prejudice, the trial court found the pretrial delay had no impact on defendant's ability to defend himself given the nature of the proceeding was to assess defendant's status at the time of trial and whether he met the criteria of a sexually violent predator. Further, any "oppressive pretrial tension" from the time defendant asserted his speedy trial rights in 2018 was diminished because the court's record demonstrated no expert provided him with a favorable evaluation. Accordingly, the trial court denied defendant's motion because he failed to establish a due process violation.

Defendant appeals.

## DISCUSSION

### I

#### *There Was No Speedy Trial Violation*

Defendant contends the trial court erred by denying his motion to dismiss for lack of a speedy trial. We review the trial court's findings of fact for substantial evidence and its conclusions of law de novo. (*Camacho*, *supra*, 15 Cal.5th at p. 383.) " '[I]ts application of the law to the facts is reversible only if arbitrary and capricious.' " (*Ibid*.) We conclude the trial court did not err.

### A

#### *Relevant Authority*

In 2023, our Supreme Court in *Camacho* considered, for "the first time," "the constitutional framework for evaluating the timeliness of [sexually violent predator] trials." (*Camacho*, *supra*, 15 Cal.5th at p. 368.) Our Supreme Court held: "[I]t suffices to consider the factors laid out [by the United States Supreme Court] in *Barker* in deciding whether an alleged [sexually violent predator] has been deprived of the constitutional right to a timely trial." (*Camacho*, at p. 379.) "The *Barker* test outlines a broadly relevant set of functional, case-dependent factors to consider in analyzing

8

questions of trial timing.  To the extent the [sexually violent predator] context differs from the criminal context in which *Barker* was decided, the flexibility of the test allows courts to account for those differences."  (*Camacho*, at p. 381.)

"[T]he *Barker* court declined to adopt any bright-line rules for determining when the right has been violated.  The court instead identified four factors for courts to examine:  the length of the pretrial delay, the reason for the delay, the defendant's assertion of his[, her, or their] right, and prejudice to the defendant caused by the delay. [Citation.]  The defendant carries the 'burden of demonstrating a speedy trial violation under *Barker*'s multifactor test.'  [Citation.]  Because none of these factors is dispositive, 'courts must still engage in a difficult and sensitive balancing process' to determine whether trial has been unconstitutionally delayed."  (*Camacho*, *supra*, 15 Cal.5th at p. 380.)

B

*The Trial Court Did Not Abuse Its Discretion*

1

*The Length Of The Delay Weighs In Favor Of Finding A Speedy Trial Violation*

"We begin with the first *Barker* factor, the length of the pretrial delay.  This factor operates as a threshold hurdle; '[u]ntil there is some delay [that] is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'  [Citation.]  'If the accused makes this showing, the court must then consider . . . the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.' "  (*Camacho*, *supra*, 15 Cal.5th at p. 383.)

Here, defendant awaited trial on a petition for commitment that was filed in June 2009 and ultimately taken to trial in March 2021.  (*Lozano*, *supra*, C094245.)  "Although this delay is not entirely out of line with delays seen in other [sexually violent predator] cases, it is an exceedingly lengthy delay all the same."  (*Camacho*, *supra*, 15 Cal.5th at p. 383; see *id*. at p. 376, fn. 2 [reciting cases with anywhere from three- to 22-year delays,

9

with the average case having a delay of over 10 years].)  The People concede, and we agree, this prolonged delay weighs in favor of defendant demonstrating a speedy trial violation.

2

*The Reason For The Delay Rests Mainly With Defendant*

"We next turn to the second *Barker* factor, the reasons for the delay.  This is the 'flag all litigants seek to capture' [citation] because the permissibility of pretrial delay depends to a great extent on who bears responsibility for it and why.  [¶]  In analyzing the second factor, courts examine 'whether the government or the criminal defendant is more to blame for th[e] delay.'  [Citations.]  Courts also examine why the delay occurred, for 'different weights should be assigned to different reasons.'  [Citation.]  If the government deliberately delays trial to hamper the defense, for instance, that effort at manipulation 'should be weighted heavily against the government.'  [Citation.]  'A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.  Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.' "  (*Camacho*, *supra*, 15 Cal.5th at pp. 383-384.)  " 'Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground.  While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable.' "  (*Id*. at p. 388.)  "Because trial courts ultimately control when trial will be held, they bear particular responsibility for preserving an alleged [sexually violent predator]'s constitutional right to a timely trial."  (*Id*. at p. 389.)

"By contrast, 'if delay is attributable to the defendant, then his[, her, or their] waiver [of the right to a speedy trial] may be given effect under standard waiver doctrine.' "  (*Camacho*, *supra*, 15 Cal.5th at p. 384.)  "In general, delays sought by the

10

defendant's counsel weigh against the defendant's claim of a speedy trial violation." (*Id.* at p. 385; accord, *Vermont v. Brillon* (2009) 556 U.S. 81, 92-93.) Both the United States Supreme Court and our Supreme Court have "noted that the analysis might be different if . . . the delay was shown to result from 'a systemic "breakdown in the public defender system." ' " (*Camacho*, at p. 385.) Our Supreme Court further permitted consideration of whether defense counsel acted against defendant's express wishes or defendant's time waiver was involuntary. (*Id.* at pp. 385-386.)

Here, defendant conceded in the trial court that he agreed with his counsel's strategy from 2009 to 2018 to delay trial for the purpose of seeking treatment. As to the delay after 2018, the trial court found it was the product of valid reasons, including court closures due to the COVID-19 pandemic and the lack of a favorable expert witness. The trial court acknowledged the state's part in the overall delay given the amount of time that had elapsed without defendant going to trial but found the prosecution did not deliberately delay trial to hamper the defense. Ultimately, the trial court determined the reason for the delay rested mainly with defendant.

Defendant does not contest the trial court's factual findings. Instead, he argues the court abused its discretion by not assigning more fault to the state. Specifically, defendant argues the procedures under the Act ensure petitioned defendants receive a lifetime commitment and are thus incentivized to delay trial. Defendant proposes that the state should be held responsible whenever a delay through a defendant's acquiescence extends past 10 years. We disagree.

The *Camacho* court articulated the standard for determining fault of the delay as a balancing test consisting of multiple considerations, such as intent of the prosecution, wishes of the defendant, and systemic insufficiencies. (*Camacho*, *supra*, 15 Cal.5th at pp. 380, 385-388.) It did not impose bright-line rules, as defendant seeks us to adopt now, despite acknowledging multiple examples of decades-long delays among cases brought under the Act. (*Camacho*, at pp. 376, fn. 2, 381, 383.) Our Supreme Court

11

ultimately concluded, pursuant to *Barker*, that a balancing test was best to assess who bore fault for prolonged delay, even in light of the nature of the proceedings under the Act. (*Camacho*, at pp. 384-386.) Thus, we decline to adopt a bright-line rule as proposed by defendant to place blame with the state in cases of over a decade of delay in the face of the defendant's acquiescence.

Further, the trial court's finding that the reason for the delay rested mainly with defendant was not an abuse of discretion. The trial court considered the relevant factors, including the state's intent and each party's role in the delay. While the trial court recognized the state shouldered some of the blame given the length of the delay and the time it took the state to get defendant to trial after he demanded a speedy trial, the court reasonably believed defendant was primarily responsible given the state was prevented from commencing a trial because of delays caused by COVID-19, defendant's strategy to delay trial for nine years to seek treatment, and defendant's trouble finding an expert witness.

We do not agree with defendant's argument the nature of proceedings under the Act incentivize delay such that due process is offended. Indeed, as our Supreme Court acknowledged, proceedings under the Act determine a defendant's current level of dangerousness and likelihood of recidivism. (*Camacho*, *supra*, 15 Cal.5th at pp. 369, 392.) Before trial, defendants can seek treatment in state hospitals, addressing behavior concerns to avoid true findings and indefinite commitment or a defendant can go to trial to secure a jury finding. (*Id*. at pp. 370, 392-393.) According to our Supreme Court, this procedure results in limited prejudice to defendants, especially when compared to criminal defendants. (*Id*. at pp. 391-392.) While the state bears a burden to take defendant to trial under the Act (*Camacho*, at pp. 383-384, 388), the Act empowers defendants to make strategic decisions about their cases (see *Camacho*, at p. 393) and, absent the factors pointing to prejudicial government-caused delay, defendants are not entitled to relief on speedy trial grounds (see *id*. at p. 380).

12

Accordingly, the trial court did not abuse its discretion by finding this factor did not weigh in favor of finding a speedy trial violation because of defendant's primary responsibility for the delay.

3

*Defendant's Speedy Trial Assertion Weighs Moderately In His Favor*

"Analysis of the third *Barker* factor, the [defendant]'s assertion of his[, her, or their] right to a timely trial, does not hinge on ' "the number of times the accused acquiesced or objected; rather, the focus is on the surrounding circumstances, such as the timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, the accused's pretrial conduct (as that conduct bears on the speedy trial right), and so forth. [Citation.] The totality of the accused's responses to the delay is indicative of whether he or she[ or they] actually wanted a speedy trial." ' [Citation.] Viewing the complete picture matters because '[t]he more serious the deprivation [of the right to a speedy trial], the more likely a defendant is to complain.' [Citation.]

"It bears some emphasis that assertion of the right is only one factor in the analysis, and not a dispositive one; in *Barker*, the [United States Supreme C]ourt explicitly rejected the argument that a defendant must expressly demand a speedy trial or else be deemed to have waived the right. [Citation.] Instead, the court instructed that 'the defendant's assertion of or failure to assert [the] right to a speedy trial' is just one factor to balance against the others and must be evaluated in a holistic manner. [Citation.] This flexibility allows courts 'to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his[, her, or their] attorney acquiesces in long delay without adequately informing his[, her, or their] client, or from a situation in which no counsel is appointed.' [Citation.] The high court emphasized, however, that 'failure to assert the right will make it difficult for a defendant

13

to prove that he[, she, or they] was [or were] denied a speedy trial.' " (*Camacho*, *supra*, 15 Cal.5th at pp. 390-391.)

Here, the court found defendant asserted his right to a speedy trial in 2018 and that he continued to assert his right until trial. To the trial court, defendant's firm assertion made this factor weigh moderately in his favor. Defendant contends the court should have weighed this factor heavily in his favor because the Act incentivizes delay. Given our prior conclusion the Act does not incentivize delay we similarly reject this argument.

Defendant also contends the three-year deprivation following his 2018 assertion for a speedy trial was burdensome and should have been weighed even more in his favor. We disagree and conclude the trial court reasonably found the delay after a trial demand weighed in defendant's favor but was tempered in light of the nine-year consensual delay that preceded it. While defendant was strong in his assertion for a speedy trial when he eventually made it, it is uncontroverted that for the majority of the time his case was pending he did not desire to assert his right to a speedy trial. Thus, the trial court did not abuse its discretion in declining to assign additional weight in defendant's favor for this factor.

4

*Prejudice To Defendant Weighs Against A Speedy Trial Violation*

"The final *Barker* factor is the prejudice to the defendant caused by the delay in bringing the case to trial. 'Prejudice, of course, should be assessed in the light of the interests of defendants [that] the speedy trial right was designed to protect.' [Citation.] In the criminal context, the court has identified 'three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " (*Camacho*, *supra*, 15 Cal.5th at p. 391.) While delay presumably prejudices criminal defendants, who are judged by proof of past conduct, sexually violent predators are judged by proof of their current conduct and evaluation, mitigating the presumption of prejudice that applies in

14

criminal cases. (*Id*. at pp. 391-392.) Similarly, "pretrial [sexually violent predator] custody does differ from pretrial criminal detention in certain pertinent respects. After the trial court holds a probable cause hearing, alleged [sexually violent predator]s are confined at a state hospital, not jail, and begin receiving mental health treatment while they await trial. [Citations.] Pretrial treatment of the underlying mental disorder that caused the state to seek commitment in the first place may ultimately facilitate the individual's release before trial." (*Id*. at p. 393.)

"Determining how heavily to weigh the prejudice resulting from pretrial custody therefore requires a sensitive inquiry into the circumstances of the case. For individuals who have never received a favorable expert evaluation, delay in holding trial will generally entail less prejudice than for individuals who have a more substantial basis for arguing they do not satisfy the criteria for [sexually violent predator] commitment. Where an individual makes such a showing, the amount of prejudice may increase as the length of the delay increases. For example, in the case of an individual who has expert reports recommending release, a four-year delay in going to trial will generally be significantly more prejudicial than a one-year delay." (*Camacho*, *supra*, 15 Cal.5th at p. 393.)

Here, the trial court found the nature of proceedings under the Act, which judge a defendant by his, her, or their current dangerousness and not past conduct, inherently limited the prejudicial impact of the prolonged delay. It also found the delay during the time after defendant requested trial was minimal because he did not have a favorable expert witness. Defendant disputes these findings, arguing his pretrial confinement was more oppressive than the court gave credit for and the weight of evidence against him made it a close case. We disagree.

The trial court's findings regarding the oppressiveness of the pretrial delay rests on the reasoning of our Supreme Court in *Camacho*, which found that proceedings under the Act limit the prejudicial impact resulting from delay given the Act's focus on current

15

dangerousness and the treatment available to defendants awaiting trial. (*Camacho*, *supra*, 15 Cal.5th at p. 393.) It was not unreasonable for the trial court to adopt our Supreme Court's reasoning. Further, defendant does not demonstrate the delay effected the merit of his case in any way given that he never had favorable expert reports. Even if defendant's case were close, defendant must show the delay caused him to be in a less advantageous position than if the delay had not occurred. (*Ibid*.) Defendant has failed to make this showing and concedes he cannot. Accordingly, the trial court did not abuse its discretion by finding the prejudice to defendant did not weigh in favor of a speedy trial violation.

5

*The Factors Balance Against A Speedy Trial Violation*

Balancing the *Barker* factors, we conclude defendant has not demonstrated the trial court abused its discretion by finding no violation of defendant's due process right to a timely trial. Only one factor—the length of the delay—strongly supports defendant's claim of a due process violation, while another—assertion of right—moderately supports defendant's claim. Though some of the weight for the delay must be assigned to the trial court and the prosecution, defendant also bears some weight by agreeing to delay trial for nine years to seek treatment. While defendant was strong in his assertion for a speedy trial after the nine-year delay, a nationwide pandemic and his pursuit of an expert provided reasonable justification unaffiliated with the state for that delay. Finally, defendant did not suffer significant prejudice to his case due to the delay, especially considering he did not have favorable expert reports. Accordingly, we conclude the court did not abuse its discretion by finding defendant did not suffer a violation of his right to a timely trial.

16

## II

### *Defendant's Substantial Evidence Argument Is Forfeited*

Defendant contends insufficient evidence supports the trial court's finding he was a sexually violent predator. The People contend this issue is not properly before this court and should have been brought in defendant's prior appeal. We agree with the People.

"In an appeal following a limited remand, the scope of the issues before the court is determined by the remand order." (*People v. Murphy* (2001) 88 Cal.App.4th 392, 396-397.) The remand order in defendant's prior appeal provided: "The order of commitment is conditionally reversed. The court shall allow the parties to file briefing and hold a hearing on a motion to dismiss the [sexually violent predator] commitment petition based on a violation of defendant's due process right to a timely trial." (*Lozano*, *supra*, C094245.)

Because the trial court was limited to addressing defendant's motion to dismiss, the scope of our review is limited to defendant's motion to dismiss. Any claim defendant could have brought during his initial appeal is forfeited. (See *People v. Senior* (1995) 33 Cal.App.4th 531, 533-534 [sentencing issue raised in third appeal forfeited when the prior two appeals challenged the sentence on two different counts].) "[W]here a criminal defendant could have raised an issue in a prior appeal, the appellate court need not entertain the issue in a subsequent appeal absent a showing of justification for the delay." (*Id*. at p. 538.) Defendant offers no justification for not raising his sufficiency of the evidence claim in his prior appeal, and thus the issue is forfeited.

17

## DISPOSITION

The order denying defendant's motion to dismiss is affirmed.

/s/ _____
ROBIE, Acting P. J.

We concur:

/s/ _____
RENNER, J.

/s/ _____
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.